UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RICKY M. ARNTSEN, | ) | CASE NO. C07-1967-JCC-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| STEVEN CLARK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff is currently incarcerated in Snohomish County Jail. Proceeding *pro se* and *in forma pauperis*, plaintiff has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that prior to his current confinement, he was falsely arrested twice by Seattle Police Officer Stephen Clark. Plaintiff and defendants have filed cross motions for summary judgment. Having reviewed the motions and documents in support thereof, the Court recommends that plaintiff's motion be denied and that defendants's motion be granted and the complaint and this action be dismissed with prejudice.

/ / /

## BACKGROUND

Transcripts from plaintiff's criminal trial and exhibits submitted by the parties establish the following facts, which, except as noted below, are not in dispute:

In May of 2005, plaintiff started buying drugs from a woman named Monica Green, and then reselling them to make money. (Dkt. No. 36, Ex. B at 221). On October 5, 2005, plaintiff and Ms. Green got into a fight in a park in Seattle. While the cause of the fight is in dispute, as well as who initiated it, it is undisputed that plaintiff was seen by several witnesses punching Ms. Green, grabbing her hair, and banging her head into a concrete pad underneath a picnic table. (*Id.*, Ex. D at 10; Ex. E at 17). Plaintiff himself testified at his trial that "he might have swung down at her one or two more times." (*Id.*, Ex. A at 35).

Seattle Police Officer Wesley Buxton arrived at the scene and after talking to Ms. Green, plaintiff, and the witnesses, decided to arrest plaintiff. (*Id.*, Ex. F at 175). Rather than comply with Officer Buxton's commands, plaintiff lay on the ground with his hands underneath his stomach. (*Id.*, Ex. A at 42). Several other police officers, including defendant Stephen Clark, arrived and tried to assist Officer Buxton in arresting plaintiff. Plaintiff told the police that he was not going to cooperate because "this is not right. This is unfair." (*Id.* at 44).

During the attempt to arrest plaintiff, Officer Clark states that plaintiff swung his elbow at him and hit him in the chest. (Dkt. No. 38 at 2). Another Officer, Andy Ragonesi, testified that he saw plaintiff strike several officers with his elbows and believes one of the officers struck was Officer Clark. (Dkt. No. 36, Ex. G at 225-26). Plaintiff, however, denies having hit Officer Clark with his elbow.

The officers warned plaintiff that they would fire a dart from a Taser gun at him if he failed

REPORT AND RECOMMENDATION
PAGE 2

to put his hands behind his back, but plaintiff again refused. (*Id.*, Ex. F at 177). Officer Ragonesi fired the Taser at plaintiff. (*Id.*) After being hit with the Taser dart, plaintiff became compliant and the officers were able to handcuff him and place him under arrest. (*Id.* at 178).

Based upon the incident in the park, plaintiff was charged with two counts of assault and one count of malicious mischief. Plaintiff represented himself at his criminal trial and was convicted of one count of assault in the 4th degree and malicious mischief. (*Id.*, Ex. I). He appealed to the Washington Court of Appeals, which affirmed his conviction but remanded for resentencing. *See State v. Arntsen*, 2007 WL 2084894 (Wash. Ct. App. July 23, 2007).

On December 13, 2005, while he was out on bond for the assault charges, plaintiff fell asleep in his car, which was parked but still had the engine running, behind a fast-food restaurant in Seattle. A concerned passerby apparently tried to awaken plaintiff, but having no success, called the Seattle Fire Department. (Dkt. No. 36, Ex. J). Firefighters arrived on the scene and the supervisor, Lt. Kenneth Stuart, turned off the car's engine and removed the keys. Several firefighters then woke plaintiff up and asked him if he was alright. Plaintiff's speech was "difficult to understand" but he responded that he was tired because he had been up all night. (*Id.*) Firefighters asked plaintiff further questions to assess his mental state, but plaintiff became agitated and suggested that they call the police, which they did.

As the firefighters waited for the police to arrive, Lt. Stuart positioned himself against the car door on the driver's side, preventing plaintiff from exiting the car. (Dkt. No. 49, Ex. Y at 12). He did this for several reasons: to protect plaintiff from traffic and to facilitate his assessment of plaintiff, whom Lt. Stuart considered "unpredictable" and possibly lacking all his faculties. (*Id.* at 12, 14, 16). Plaintiff asserts that he told Lt. Stuart that he needed to exit the car in order to use

REPORT AND RECOMMENDATION
PAGE 3

01 the restroom. (Dkt. No. 49 at 21-22). Lt. Stuart does not recall plaintiff telling him this *Id*(, Ex.

02 Y at 21). Plaintiff opened the car door a few inches and Lt. Stuart shut the door. ( *Id*. at 12).

03 Moments later, plaintiff opened the door quickly, slamming it into the knee of Lt. Stuart, and then

04 went into the fast-food restaurant. (Dkt. No. 37, Ex. B at 3). Although he had no visible damage

05 to the knee, Lt. Stuart had his crew examine it to ensure "[his] knee worked" and they found no

06 damage. (Dkt. No. 49, Ex. Y at 16).

07 Several Seattle Police Officers arrived on the scene, including Officer Clark. After talking

08 to the firefighters, Officer Clark arrested plaintiff for assault against a firefighter based upon hitting

09 Lt. Stuart's leg with the car door. (Dkt. No. 38 at 3). The next day, Seattle Police Detective

10 James Cooper reviewed the incident and then prepared a Certification of Probable Cause. (Dkt.

11 No. 37 at 2). Later, the King County Prosecutors Office reviewed the case and decided to dismiss

12 the charge.

13 On December 7, 2007, plaintiff submitted a civil rights complaint to the Court pursuant

14 to 42 U.S.C. § 1983. (Dkt. No. 1, Attachment). The original complaint was deficient and the

15 Court granted plaintiff leave to amend. (Dkt. No. 10). Plaintiff's subsequent complaint was also

16 deficient and the Court granted plaintiff a second opportunity to amend. (Dkt. No. 17). On

17 February 20, 2008, plaintiff filed an amended complaint that cured the deficiencies and the Court

18 directed that it be served on defendants. (Dkt. No. 19).

19 Defendants filed their answer on April 25, 2008. (Dkt. No. 23). Plaintiff filed a motion

20 for summary judgment on May 16, 2008. (Dkt. No. 26). Defendants filed their response on June

21 6, 2008. (Dkt. No. 32). Plaintiff attempted to file a reply on June 26, 2008, but the reply was

22 stricken as untimely. Defendants filed their own motion for summary judgment on June 11, 2008.

(Dkt. No. 35). Plaintiff filed a response to defendants' summary judgment motion on July 7, 2008 (Dkt. No. 49) and the motions are ready for review.

## DISCUSSION

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In addition, in order to hold a governmental unit, such as the Seattle Police Department ("SPD"), liable under § 1983, a plaintiff must demonstrate that any constitutional deprivation he suffered was the result of a "custom or policy" of the governmental unit. *See Board of County Comm'rs v. Brown,* 117 S. Ct. 1382, 1388 (1997).

01  Plaintiff alleges in his second amended complaint that Officer Clark violated his
02 constitutional rights by falsely arresting him twice, that Detective Cooper violated his rights by
03 issuing the Certification of Probable Cause after the second arrest, and that the SPD violated his
04 rights by maintaining a custom and policy that led to these violations. (Dkt. No. 18 at 6-7).
05 Although plaintiff's complaint uses terms such as "wrongful arrest," "malicious prosecution," and
06 "failure to intervene," it is clear that the gravamen of the complaint is that plaintiff believes that
07 his two arrests were unjustified and were motivated by improper reasons. For example, plaintiff
08 alleges that before Officer Clark arrested plaintiff on October 5, 2005, Officer Clark had learned
09 that plaintiff had been released from prison pursuant to the Washington Supreme Court's decision
10 in *In re Personal restraint of Andress*, 147 Wash. 2d 602 (2002), which held that a conviction for
11 felony murder may not be predicated upon second degree assault. Plaintiff contends that Officer
12 Clark disagreed with the *Andress* decision and thought that plaintiff should not have been released
13 and should "be returned to prison at all costs." (Dkt. No. 18 at 2). Plaintiff further alleges that
14 when he arrived on the scene of the second arrest on December 13, 2005, Officer Clark yelled,
15 "Ricky Arntsen! That's one of those guys that should still be locked up but got out of prison . .
16 . and I've got an assault charge against him right now." (*Id*. at 3). In light of these allegations, the
17 Court will construe plaintiff's complaint as essentially raising two claims of false arrest.[1]

18  In order to comport with the Fourth Amendment, an arrest must be supported by probable
19 cause. *See Whiteley v. Warden*, 401 U.S. 560, 564-66 (1971). Probable cause to arrest exists

20 ───────────────────
21 [1] To the extent that plaintiff seeks to raise any other claims, including state law claims, in other pleadings, the Court will not consider the claims because plaintiff never amended his
22 complaint to include them. *See, generally, King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("*[p]ro se* litigants must follow the same rules of procedure that govern other litigants.")

REPORT AND RECOMMENDATION
PAGE 6

01 when officers have knowledge or reasonably trustworthy information sufficient to lead a person
02 of reasonable caution to believe an offense has been or is being committed by the person being
03 arrested. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The Court looks to
04 "the totality of circumstances known to the arresting officers, [to determine if] a prudent person
05 would have concluded that there was a fair probability that [the defendant] had committed a
06 crime." *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986). Probable cause is an objective
07 standard and a police officer's subjective intention in exercising his discretion to arrest is
08 immaterial in judging whether his actions were reasonable for Fourth Amendment purposes.
09 *Lopez,* 482 F.3d at 1072.

10 Here, the Court has little difficulty in concluding that plaintiff has not met his burden of
11 showing that there is a triable issue of fact regarding the existence of probable cause for the two
12 arrests. Before the first arrest, police talked with several witnesses who had seen plaintiff punch,
13 grab and bang Ms. Green's head against the ground. Plaintiff himself admits fighting with Ms.
14 Green. These undisputed facts support a showing of probable cause. Plaintiff appears to argue
15 that probable cause is lacking because no witness can state with absolute certainty that he or she
16 saw plaintiff elbow Officer Clark. However, plaintiff's argument fails because first, probable cause
17 does not require absolute certainty, and second, because an arrest is valid so long as the arresting
18 officers had probable cause to arrest the suspect for *any* criminal offense. *See Devenpeck v.*
19 *Alford*, 543 U.S. 146, 153-155 (2004). Probable cause clearly existed to arrest plaintiff for
20 assaulting Ms. Green, and therefore even if probable cause did not exist to support an arrest for
21 assaulting Officer Clark, the arrest was still valid.

22 Regarding the second arrest, the record shows that it is undisputed that plaintiff forcibly

REPORT AND RECOMMENDATION
PAGE 7

opened the door against Lt. Stuart's leg. The Washington courts have defined assault as including an "attempt, with unlawful force, to inflict bodily injury upon another." *State v. Stevens*, 158 Wash. 2d 304, 311 (2006). No physical injury is required. *Id.* at 314. Lt. Stuart's account of the incident, as repeated three times to different investigators, consistently describes plaintiff purposely slamming the car door into his knee. (Dkt. No. 38, Ex. A; Dkt. No. 39, Ex. B; Dkt. No. 49, Ex. Y). There is no evidence that plaintiff informed Officer Clark that he opened the door because he urgently needed to relieve himself. Even if there were such evidence, Officer Clark had probable cause to arrest plaintiff for assault because based upon the totality of the circumstances, there was a "fair probability" that plaintiff had committed the crime. Therefore, plaintiff has not shown that there is a genuine issue of material fact regarding the existence of probable cause and defendants' motion for summary judgment on the false arrest claims should be granted.[2]

## CONCLUSION

Based upon the foregoing, the Court concludes that plaintiff has not satisfied his burden of showing that a genuine issue of material fact exists regarding his claim that defendants falsely arrested him. Accordingly, the Court recommends that plaintiff's motion for summary judgment be denied, that defendants' motion for summary judgment be granted, and this action be dismissed with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 17th day of July, 2008.

Mary Alice Theiler
United States Magistrate Judge

---

[2] In light of this conclusion, defendants' alternative arguments based upon the statute of limitations and qualified immunity need not be addressed.